DECISION
This is an appeal by plaintiff-appellant, Joseph Pingue, Sr., from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants, Bruce Hyslop and Hyslop Hyslop Co., L.P.A. (collectively "defendants").
The following background facts are taken primarily from the trial court's decision of July 31, 2001, sustaining defendants' motion for summary judgment. Plaintiff and his ex-wife, Joanna Pingue ("Joanna"), began divorce proceedings in Delaware County in 1990. The divorce proceedings concluded in 1999, and the trial court noted that the divorce "appears to have been an unusually protracted and contentious affair, with Plaintiff and Joanna Pingue filing a series of contempt motions and counter-motions." While the divorce action was pending, the trial court issued a temporary order awarding Joanna spousal support, child support, and custody of the couple's minor children. The court also ordered plaintiff to pay the couple's debts; when plaintiff apparently failed to obey that order, Joanna filed two motions, on March 21, 1991 and December 23, 1991, respectively, seeking to hold plaintiff in contempt of court. The trial court sustained both motions, but held the imposition of sentence in abeyance "pending further orders."
On July 13, 1992, the trial court filed a judgment entry/decree of divorce containing various provisions regarding the respective post-divorce responsibilities of the parties. Shortly thereafter, on July 27, 1992, Joanna filed a third motion to hold plaintiff in contempt of court for his alleged failure to pay her the sum of $543,000 as required by the divorce decree. By judgment entry dated August 6, 1992, the trial court again found plaintiff in contempt and ordered that he be remanded to the custody of the Delaware County Sheriff until such time as he fully complied with the court's prior orders.
On April 12, 1994, Joanna filed a fourth motion seeking to hold plaintiff in contempt of court, alleging that plaintiff had failed to maintain medical insurance for her and to hold her harmless from certain business-related litigation expenses as required by the divorce decree. Following a hearing, the trial court filed a judgment entry, dated February 15, 1995, again finding plaintiff in contempt of court. In the entry, the court ordered plaintiff to reimburse Joanna for medical expenses in the amount of $20,119.09. The trial court also awarded Joanna $3,372.50 for business-related litigation expenses, $17,000 for attorney's fees incurred in connection with the various contempt motions, and $10,000 for damage to her credit caused by plaintiff's actions. Finally, the court sentenced plaintiff to 180 days in jail, and imposed a fine of $2,700.
Plaintiff appealed the judgment of the trial court to the Fifth District Court of Appeals, and the appellate court affirmed in part and reversed in part, and remanded the matter to the trial court for further proceedings. Specifically, the appellate court upheld the fourth contempt finding and affirmed the award for medical expenses in the amount of $20,119.09. However, regarding the award of attorney's fees, the appellate court found that there was insufficient evidence as to the number of hours spent by Joanna's attorney in connection with the contempt motions. Thus, the appellate court remanded the case to the trial court for a hearing to take evidence on the amount of attorney's fees payable by plaintiff for Joanna's successful prosecution of the various contempt citations.
In August 1997, plaintiff hired defendants to represent him at the hearing on remand. Upon learning that plaintiff had not yet paid the $20,119.09 amount for medical expenses, defendants advised plaintiff to pay the amount, and defendants specifically recommended that plaintiff pay the amount prior to the hearing. Plaintiff satisfied that part of the judgment on September 26, 1997.
On February 3, 1999, a magistrate of the Delaware County Court of Common Pleas conducted the hearing on remand. During the hearing, Joanna's counsel, Anthony Heald, introduced evidence regarding the number of hours he worked in connection with the various contempt motions, and defendants cross-examined Heald and challenged his method of reconstructing his bills.
In a decision filed February 8, 1999, the magistrate reaffirmed the fourth contempt citation and found that Joanna's attorney expended 137 hours, at a rate of $125 per hour, in connection with that motion. In the decision, the magistrate ordered plaintiff to pay $17,000 to Joanna for attorney's fees and sentenced plaintiff to 30 days in jail unless he paid that amount within thirty days. A judge of the Delaware County Court of Common Pleas adopted the magistrate's decision on April 22, 1999; however, on May 14, 1999, the trial judge vacated the judgment entry adopting the magistrate's decision after the judge realized he had earlier recused himself from the divorce action. Since that date, the magistrate's decision has neither been adopted nor rejected by the trial court.
On February 14, 2000, plaintiff filed a pro se complaint against defendants, alleging two counts of legal malpractice. Under count one of the complaint, plaintiff alleged that defendants committed malpractice by advising him to pay the award of medical bills, thereby damaging plaintiff in the amount of $20,119.09. Plaintiff alleged that defendants should have made a motion to vacate the award based upon an "Agreed Judgment Entry" signed by plaintiff and his ex-wife on April 13, 1993 (but never filed with the trial court), purporting to resolve all issues between the parties. Under count two of the complaint, plaintiff alleged that, despite his numerous requests, defendants failed to consult with plaintiff or prepare for a contempt hearing on February 3, 1999, on issues arising out of plaintiff's divorce and related litigation, resulting in damages to plaintiff when a judgment totaling over $17,000 was rendered against him.
Defendants filed an answer and a counterclaim on March 22, 2000. In the counterclaim, defendants alleged that they had entered into an agreement with plaintiff to render legal services and that, pursuant to the terms of the agreement, defendants provided legal services for which they presented a statement to plaintiff for the payment of the excess of charges over the initial retainer paid. Defendants alleged the excess to be in the amount of $1,753.75, and further alleged that plaintiff breached the agreement by failing to make payments consistent with the terms entered between the parties.
On March 12, 2001, defendants filed a motion for summary judgment. Also on that date, defendants filed a motion for "termination of deposition." On July 9, 2001, plaintiff filed a memorandum contra defendants' motion for summary judgment. The trial court declined to consider plaintiff's memorandum contra because it was filed past the deadline set by a prior court order.
By decision and entry filed June 29, 2001, the trial court sustained defendants' motion for termination of deposition and set a nonoral hearing date for defendants' motion for summary judgment. By decision filed July 31, 2001, the trial court sustained defendants' motion for summary judgment. The decision of the trial court was journalized by judgment entry filed on the same date.
On appeal, plaintiff sets forth the following four assignments of error for review:
ASSIGNMENT OF ERROR NO. 1
 THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
 1. A GENUINE ISSUE OF MATERIAL FACT REMAINS TO BE LITIGATED WITH RESPECT TO APPELLANT'S COMPLAINT.
 A. THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT WAIVED THE RIGHT TO RAISE THE ISSUE OF THE APRIL 13, 1993 AGREED JUDGMENT ENTRY IN FUTURE PROCEEDINGS.
 B. A GENUINE ISSUE OF MATERIAL FACT REMAINS TO BE LITIGATED WITH RESPECT TO WHEN APPELLEE RECEIVED NOTICE OF THE APRIL 13, 1993 AGREEMENT.
 C. A GENUINE ISSUE OF MATERIAL FACT REMAINS TO BE LITIGATED WITH RESPECT TO APPELLEE'S CONDUCT AT THE FEBRUARY 3, 1999 HEARING.
 2. A GENUINE ISSUE OF MATERIAL FACT REMAINS TO BE LITIGATED WITH RESPECT TO APPELLEES COUNTERCLAIM.
ASSIGNMENT OF ERROR NO. 2
 THE FRANKLIN COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR IN FAILING TO APPLY THE APPROPRIATE STANDARD IN CONSIDERING A MOTION FOR SUMMARY JUDGMENT.
ASSIGNMENT OF ERROR NO. 3
 THE FRANKLIN COUNTY COURT OF COMMON PLEAS COMMITTED AN ABUSE OF DISCRETION IN REFUSING TO CONSIDER APPELLANT'S MEMORANDUM CONTRA MOTION FOR SUMMARY JUDGMENT.
ASSIGNMENT OF ERROR NO. 4
 THE COURT OF COMMON PLEAS COMMITTED AN ABUSE OF DISCRETION IN FAILING TO PERMIT APPELLANT TO COMPLETE THE DEPOSITION OF APPELLEE.
Plaintiff's first and second assignments of error are interrelated and will be considered together. Under the first assignment of error, plaintiff asserts that the trial court erred in granting summary judgment in favor of defendants on plaintiff's legal malpractice action. Under his second assignment of error, plaintiff contends that the trial court failed to apply the appropriate standard in considering his motion for summary judgment.
In Helms v. Cahoon (2002), Summit App. No. 20527, the court noted the standard of review for summary judgment, as well as the elements of legal malpractice, as follows:
 To prevail on a summary judgment motion, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 292
* * *. To accomplish this, the movant must be able to point out to the trial court "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Id. at 293 * * *. If such evidence is produced, the non-moving party must proffer evidence that some issue of material fact remains for the trial court to resolve. Id.
 An appellate court reviews an award of summary judgment de novo and, like the trial court, must view the facts in the case in the light most favorable to the non-moving party. * * * Any doubt must be resolved in favor of the non-moving party.
* * *
 Where the non-moving party would have the burden of proving all of a number of elements in order to prevail at trial, the moving party in the summary judgment motion may point to evidence that the non-moving party cannot possibly prevail on an essential element of the claim. * * * If the moving party meets this burden of proof, the burden then shifts to the non-moving party to show that there is a genuine issue of material fact as to that element.
* * *
 To establish a case for legal malpractice one must prove three elements: 1) the attorney owed a duty; 2) there was a breach of that duty and the attorney failed to conform to the standard of care required by law; and 3) there was a causal connection between the conduct complained of and the resulting damage.
* * *
At the outset, we note that plaintiff's argument that the trial court erred in its application of the summary judgment standard, as asserted under the second assignment of error, is based upon plaintiff's contention that the court made no findings whether defendants met their initial burden under Civ.R. 56(C). However, even assuming, without deciding, that the court improperly applied Civ.R. 56 in granting summary judgment, plaintiff cannot show prejudice because appellate review of the trial court's grant of summary judgment is de novo, thereby rendering this issue moot. Accordingly, this court is required to construe the evidence most strongly in favor of the nonmoving party, and we will affirm the trial court only if the record shows there "is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).
Turning to the merits, in their motion for summary judgment, defendants asserted that summary judgment was appropriate as to count one of plaintiff's complaint because defendants could not, as a matter of law, have successfully filed a motion with the trial court to vacate an appellate court decision. Defendants further argued that plaintiff misperceived the scope of the issues on remand from the Fifth District Court of Appeals to the Delaware County Court of Common Pleas, and that the "law of the case" doctrine did not permit plaintiff to relitigate previously settled issues by raising new ones on remand.
On appeal, one of plaintiff's primary contentions is that there exists a genuine issue of material fact regarding the date on which defendants were made aware of a settlement agreement between plaintiff and his ex-wife. Specifically, plaintiff argues that, pursuant to an agreed judgment entry signed by plaintiff and his ex-wife on April 13, 1993, the parties settled all claims between them, thereby barring subsequent awards of $20,119.09 for medical expenses and $17,000 for attorney's fees. Plaintiff contends that he informed defendants of this agreement in 1997, when he hired defendants to represent him in connection with the remand hearing, and that defendants should have presented this agreement to the trial court during the remand hearing in 1999.
The trial court, in addressing plaintiff's contention that defendants committed legal malpractice by advising plaintiff to pay the award of medical bills, held that plaintiff failed to recognize the limited scope of the issues remanded to the trial court by the Fifth District Court of Appeals. Specifically, the trial court noted that the appellate court affirmed the $20,119.09 award for medical expenses, and therefore the issue of the award was not properly before the Delaware County Court of Common Pleas on remand. We agree.
A review of the record indicates that the Fifth District Court of Appeals affirmed in part and reversed in part the decision of the trial court finding plaintiff in contempt of prior orders of the court and imposing a sentence. One of the issues raised by plaintiff in his appeal involved whether the trial court erred in awarding his ex-wife $17,000 in attorney's fees. The appellate court found that "insufficient evidence was offered regarding the number of hours allegedly spent by counsel for appellee." Pingue v. Pingue (1995), Delaware App. No. 95CAF02006. Thus, the appellate court remanded the matter to the trial court "for a full hearing regarding the amount of attorney's fees payable by the appellant for appellee's successful prosecution of her various contempt citations." Id.
Also in his appeal to the Fifth District Court of Appeals, plaintiff raised under his third assignment of error the issue whether the trial court erred in finding him in contempt for failing to maintain medical insurance for his ex-wife and in awarding her $20,119.09 in damages. The appellate court overruled this assignment of error, finding that "the trial court's decision finding appellant in contempt for failing to maintain medical insurance for appellee and awarding appellee monetary damages to be supported by competent and credible evidence." Id.
It is well settled that "[a] trial court must follow the mandate of the appellate court and, in the case of a partial remand, the trial court may not try any issue other than that set forth in the mandate." Oliver v. Empire Equip. Co. (1985), Cuyahoga App. No. 48686, citing Trout v. Tipton (1958), 106 Ohio App. 537 . In the present case, as found by the trial court in its decision granting summary judgment in favor of defendants, because the $20,119.09 award for medical expenses was affirmed by the appellate court, plaintiff's obligation to pay such expenses could not be relitigated on remand. Therefore, since the trial court was without authority to consider anew the issue of medical expenses on remand, plaintiff could not show, as a matter of law, a causal connection between the actions of defendants and the judgment against plaintiff relating to the medical bills.
Nor do the facts of this case present "extraordinary circumstances justifying deviation from the court of appeals' mandate." State ex rel. Crandall, Pheils Wisniewski v. DeCessna (1995), 73 Ohio St.3d 180,184. A review of the record indicates that plaintiff failed to raise the issue of a settlement agreement in the proceedings before the trial court in 1994, at the time Joanna filed her fourth contempt action against plaintiff. Plaintiff, however, was obviously aware of the existence of the agreement in 1993 by virtue of the fact that he was a signatory to the agreement. When this issue was raised during the remand hearing on February 3, 1999, plaintiff stated, "to tell you the truth, I forgot all about the April 13th settlement. I forgot all about it until * * * I started digging back up to prepare for this hearing sometime last year." (Tr. 89.) Plaintiff has cited no precedent for the proposition that a party with knowledge and possession of a purported critical document, who was not prevented from raising the issue of its import in an earlier court proceeding, can later seek to bring that matter to the court's attention through a Civ.R. 60(B) motion. Accordingly, we find no merit to plaintiff's contention that a genuine issue of material fact remains to be litigated as to whether defendants were aware of the settlement agreement prior to the time defendants advised plaintiff to make the medical payments to his ex-wife.
Plaintiff also contends that genuine issues of material fact remain as to the second count of his complaint, in which he alleged that defendants committed malpractice by failing to consult with him or to properly prepare for the hearing on remand, preventing him from presenting various claims and defenses that would have diminished or eliminated the claims brought against him at the hearing. Plaintiff's complaint alleged that defendants' malpractice resulted in a judgment of $17,000 against him at the remand hearing.
In their motion for summary judgment, defendants asserted that the "claims and defenses" alleged by plaintiff were irrelevant to the purposes of remand and the attorney's fee award of $17,000. Defendants argued that the only issue to be decided on remand was whether the hours expended by Joanna's attorney in bringing her fourth motion in contempt were reasonable, while plaintiff's alleged claims and defenses related almost entirely to the merits of prior contempt actions brought by Joanna in 1991 and 1992.
The record indicates that, in answers to interrogatories, plaintiff was asked to identify any claims or defenses he was unable to present at the February 3, 1999 hearing. As part of his response, plaintiff indicated that he wanted defendant Hyslop to "depose my son Joseph," claiming that his son "retained some of my personal property," and had "falsely testified in court." Plaintiff asserted in his interrogatory that, "the proper deposition and discovery would have proven my innocence." Plaintiff further claimed that he told defendant Hyslop that he had "solid evidence, witnesses with credible testimony, that if we properly prepared for * * * would have cleared me of those various contempt charges."
In addressing count two of plaintiff's complaint, the trial court again noted the limited scope of the issues on remand to the Delaware County Court of Common Pleas by the Fifth District Court of Appeals. Specifically, the trial court noted that the purpose of the hearing on remand was to substantiate the number of hours Joanna's attorney worked in connection with the various contempt motions. The trial court further held in its decision as follows:
 It must be emphasized that the award of attorney's fees ordered by the magistrate relate only to the fourth contempt. To the extent that Plaintiff complains about Defendants' preparation as it relates to other issues, he has suffered and will suffer no damages. Further, to the extent that Plaintiff complains that Defendants should have been prepared to introduce evidence that would have "cleared" him of the fourth contempt, such evidence simply was not relevant. * * * With regard to the award of attorney's fees, the only evidence that was relevant on remand was evidence relating to the number of hours spent by Joanna Pingue's attorney in connection with the contempt motions. The Court has reviewed the entire transcript of the February 3, 1999 hearing. More than forty pages of that transcript * * * are devoted to such evidence. Attorney Tony Heald testified regarding the hours he worked in connection with the contempt motions. Attorney Hyslop cross-examined Mr. Heald and, when Mr. Heald admitted that he did not regularly send invoices to Joanna Pingue, Mr. Hyslop challenged his method of reconstructing Joanna Pingue's bill. Again, Plaintiff has submitted no expert testimony that would support his contention that Defendants' conduct fell below the standard of care. Upon review, the Court concludes as a matter of law that it did not.
 Having reviewed all of the evidence, and construing the evidence in a light most favorable to Plaintiff, this Court also concludes that a reasonable finder of fact could come to but one conclusion on the element of causation, and that conclusion is adverse to Plaintiff. There is simply no evidence from which a reasonable finder of fact could conclude that there is a causal connection between the conduct Plaintiff complains of and any resulting damage or loss. Even if the Delaware County court were to adopt the magistrate's decision and enforce the $17,000 award of attorney's fees against Plaintiff, a jury could not rationally conclude that those damages — or any part of them — were proximately caused by the conduct of Defendants. * * * [Id. at 11-12; Emphasis sic.]
Upon review, we find that the trial court properly granted summary judgment as to count two of plaintiff's complaint. One of plaintiff's contentions is that the remand instructions provided by the Fifth District Court of Appeals would have permitted defendants to assert new defenses as to the attorney's fees award. We disagree. While the appellate court found that plaintiff's ex-wife presented insufficient evidence regarding the number of hours allegedly spent by her counsel, the court's opinion states that the matter was being remanded to the trial court for a hearing "regarding the amount of attorney's fees payable by the appellant for appellee's successful prosecution of her various contempt citations." Pingue, supra. In the present case, we conclude that the trial court properly interpreted the appellate court's mandate to mean that the sole purpose of the remand hearing was to require plaintiff's ex-wife or her attorney to substantiate the number of attorney hours worked in connection with the contempt motions, and we find unpersuasive plaintiff's suggestion that purported evidence indicating he was innocent of the contempt charges was relevant to the appellate court's remand mandate. Similarly, we reject plaintiff's contention that the 1993 agreement was relevant to the remand determination.
Plaintiff also contends that the trial court apparently did not consider one of plaintiff's interrogatories in which part of the damages he allegedly incurred as a result of defendants' malpractice included payment to defendants of a $5,000 retainer fee. However, the allegation in plaintiff's complaint that he paid defendants "$5,000 in legal fees * * * for services which fell below the standard of care required of members of the legal profession" was based upon the same allegation as his claim for damages relating to the court's judgment against him in the amount of $17,000, i.e., that "[d]efendant's failure to consult with [p]laintiff or otherwise prepare for said hearing fell below the standard of care and representation required of members of the legal profession." We have previously held that the trial court did not err in finding no issue of material fact regarding whether damages caused to plaintiff were proximately caused by the conduct of defendants. Because the claim for damages on the retainer is predicated upon the same factual showing as the malpractice claim involving the $17,000 judgment, we disagree with plaintiff's contention that a genuine issue of material fact remains to be litigated on this issue.
Finally, plaintiff contends that a genuine issue of material fact remains to be litigated with respect to defendants' counterclaim. Plaintiff maintains that, even assuming there is no malpractice, a dispute remains regarding whether or not defendants performed the services within the scope of the agreement. In support of his argument that he challenged the statement of account, plaintiff cites to a copy of a letter from plaintiff to defendants, in which plaintiff states, "I protest your entire bill." Plaintiff also cites to his answer to the counterclaim consisting of a general denial of the allegations.
The trial court, in granting summary judgment in favor of defendants on their counterclaim, noted that the only defense asserted by plaintiff in his answer to the counterclaim is that defendants' services fell below the standard of care and representation required by members of the legal profession. The court further found that plaintiff admitted to entering into a written contract for legal services, and that plaintiff had not challenged the statement of account attached to defendants' counterclaim.
At the outset, we agree with the trial court's finding that plaintiff's defense to the counterclaim was that defendants' services fell below the standard of care and representation required of members of the legal profession. Further, the record indicates that, in support of their counterclaim, defendants submitted a copy of the fee agreement, as well as a copy of a statement of account, reflecting a balance due of $1,753.75. The only materials submitted by plaintiff in response were the general denials noted above, which were conclusory in nature and set forth no facts. Because the only factual assertion offered by plaintiff consisted of general denials, we find that the trial court did not err in granting summary judgment in favor of defendants on their counterclaim. See Cubbon Jr. and Associates Co. v. Taylor (1991), Lucas App. No. L-90-122 (in response to appellee's motion for summary judgment in suit for expenses incurred in prosecution of lawsuit, supported by statement of expenditures, appellant's response of general denial was insufficient to set forth specific facts showing a genuine issue of material fact for trial).
Based upon the foregoing, we find that the trial court did not err in granting defendants' motion for summary judgment. Accordingly, plaintiff's first and second assignments of error are overruled.
Under his third assignment of error, plaintiff contends that the trial court erred in refusing to consider his memorandum contra defendants' motion for summary judgment. More specifically, plaintiff asserts that the trial court erred in denying him leave to file his memorandum contra motion for summary judgment instanter.
By way of background, the record indicates that, following defendants' filing of their motion for summary judgment on March 12, 2001, plaintiff filed, on March 22, 2001, a motion to extend the time to answer defendants' motion for summary judgment. Plaintiff requested a 30-day extension, citing the fact that he had a previously "prepaid vacation from March 24, 2001 to April 1, 2001," and further contending that he needed additional time to conduct research. Defendants filed a memorandum contra plaintiff's motion to extend the time to answer the motion for summary judgment. In the accompanying memorandum, defendants asserted that, throughout the discovery process, plaintiff had offered a number of excuses for requiring extensions, including claims that he did not maintain files in an organized manner, that his assistant took an unscheduled vacation, that he had dental surgery, that he discovered he was diabetic, that he had a pre-scheduled vacation, that he had business matters to attend to and that he suffered a back injury.
On April 19, 2001, plaintiff filed a motion to stay all proceedings in the action pending the final disposition of the magistrate's decision, issued February 8, 1999, in Delaware County Common Pleas Court. Defendants subsequently filed a memorandum contra plaintiff's motion to stay.
By decision and entry filed April 25, 2001, the trial court sustained plaintiff's motion for extension of time to file a memorandum in opposition to defendants' motion for summary judgment. The court ordered plaintiff to file his memorandum contra on or before April 30, 2001.
On April 25, 2001, plaintiff filed a motion to extend the time to file an answer to defendants' motion for summary judgment. By decision and entry filed June 29, 2001, the trial court sustained plaintiff's motion and held that plaintiff's memorandum contra "shall be filed on or before July 5, 2001."
On July 5, 2001, plaintiff filed a motion to extend the time to file an answer to defendants' motion for summary judgment. In support, plaintiff stated that his "employees have taken vacations for the 4th of July * * * holiday," and that he "needs a reasonable amount of time to prepare and file the Brief to July 9, 2001." By decision and entry filed July 6, 2001, the trial court overruled plaintiff's motion for extension of time to file a memorandum contra defendants' motion for summary judgment. In its decision, the trial court held in pertinent part:
 * * * Defendants' motion for summary judgment was filed on March 12, 2001, nearly four months ago. Plaintiff has requested and received two extensions of time in which to file his memo contra. In this Court's view, he has had more than sufficient time to prepare and file a memorandum. Moreover, the Court notes that the basis for Plaintiff's current motion — his employees' vacations is another in a long line of similar "explanations" offered by Plaintiff for his inability to comply with this Court's case scheduling orders. While this Court makes every reasonable effort to accommodate legitimate scheduling conflicts, it finds that an additional extension of time is not warranted under the circumstances. * * * [Id. at 2.]
On July 9, 2001, plaintiff filed a memorandum contra defendants' motion for summary judgment. Also on that date, plaintiff filed a "motion to have plaintiff's memorandum contra accepted for filing and consideration instantea [sic]." Defendants filed a reply to plaintiff's motion, requesting the court to strike plaintiff's memorandum as untimely. In the trial court's decision sustaining defendants' motion for summary judgment, the trial court overruled plaintiff's motion.
Based upon the procedural history of this case, we cannot find that the trial court abused its discretion in failing to consider plaintiff's memorandum contra. The record indicates that plaintiff filed his memorandum contra past the deadline set by the trial court, despite the fact the court had already granted plaintiff two previous extensions. This court has previously held that "it is not error to rule on a summary judgment motion without considering memoranda and affidavits filed out-of-rule." Ayers v. Demas (1996), Franklin App. No. 95APE10-1296. Further, the trial court found that plaintiff's reason for needing an extension (i.e., that his employees had taken a vacation) was "another in a long line of similar `explanations' offered by Plaintiff for his inability to comply with this Court's case scheduling orders." The record supports the court's finding that plaintiff filed previous motions seeking extensions on deadlines that included similar explanations, including claims by plaintiff that he discovered he was a diabetic, that he had dental surgery, that he suffered from a back injury, whiplash, a knee injury, that he had previously scheduled vacations, that he had zoning matters to prepare for and that he had real estate projects requiring his assistance. Many of the reasons proffered by plaintiff in previous motions, including the reason cited in the July 5, 2001 motion, suggest that plaintiff placed more importance on attention to his business matters than to attempting to comply with the court's scheduling orders. In light of the record in this case, we find no abuse of discretion by the trial court, and plaintiff's third assignment of error is overruled.
Under his fourth assignment of error, plaintiff asserts that the trial court erred in failing to permit plaintiff to complete the deposition of defendant Hyslop.
The record indicates that plaintiff, acting pro se, took the deposition of Hyslop on February 26, 2001. The deposition began at 1:36 p.m., and at approximately 6:00 p.m., the parties agreed to conclude the deposition. Plaintiff indicated that he wanted to resume the deposition of Hyslop within one week. On March 12, 2001, defendants filed a motion for termination of the deposition pursuant to Civ.R. 30(D) and Civ.R. 37. In the accompanying memorandum, defendants argued that, during the deposition, plaintiff was abusive, that he badgered the witness and repeatedly accused the witness of lying. Defendants maintained that, by the end of the four and one-half hour deposition, when the parties agreed to terminate the deposition for the day, it was clear that no purpose would be served by continuing the deposition.
By decision and entry filed June 29, 2001, the trial court sustained defendants' motion for termination of deposition. In its decision, the trial court held in relevant part:
 The Court has reviewed the entire transcript of the deposition, and finds that Defendants have clearly shown that Plaintiff is conducting the deposition in such manner as unreasonably to annoy, embarrass or oppress the deponent. * * * The fact that Plaintiff is proceeding pro se in this case does not give him license to engage in the badgering, confrontational, and often hostile conduct reflected in the deposition transcript. He will be held to the same standards as a practicing attorney. In this Court's view, Plaintiff has violated those standards and has forfeited his right to continue the deposition. * * * [Id. at 3-4.]
In general, "a trial court has broad discretion in regulating the discovery process." Dennis v. State Farm Ins. Co. (2001),143 Ohio App.3d 196, 199. Civ.R. 30(D) states in relevant part that:
 * * * At any time during the taking of the deposition, on motion of any party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Civ.R. 26(C). * * *
A review of the deposition indicates that counsel for Hyslop made numerous objections during the deposition to questions posed by plaintiff as well as statements by plaintiff, including assertions that Hyslop was not telling the truth. In many instances, the inquiry by plaintiff was irrelevant, repetitious and argumentative, and involved numerous remarks by plaintiff and demands for explanations. It has been held that "[a] deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent," and "[c]onduct that is not permissible in the courtroom during the questioning of a witness is ordinarily not permissible at a deposition." Ethicon Endo-Surgery v. United States Surgical Corp. (S.D.Ohio 1995),160 F.R.D. 98, 99. Accordingly, "accusations of wrongdoing against witnesses and attorneys have no place in a deposition." Id. In the present case, plaintiff chose to proceed pro se, and he was "expected to conduct himself with the same decorum and common courtesy expected of attorneys." Lopez v. United States (D.N.M. 2001), 133 F. Supp.2d 1231, 1232. Based upon the record in this case, we cannot conclude that the trial court abused its discretion in failing to allow plaintiff to continue the deposition of Hyslop. Accordingly, plaintiff's fourth assignment of error is without merit and is overruled.
Based upon the foregoing, plaintiff's four assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
BRYANT and LAZARUS, JJ., concur.